## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**EUGENE H. IRVING**                                                                        **PLAINTIFF**

**V.**                                                    **NO. 4:20-CV-80-DMB-RP**

**WILCO LIFE INSURANCE**
**COMPANY**                                                                 **DEFENDANT**

### ORDER

Wilco Life Insurance Company seeks summary judgment on Eugene Irving's claims arising from the cancelation of his life insurance policy. Because the Court finds that cancelation of the policy was proper, summary judgment will be granted. Accordingly, Irving's motion to seal certain summary judgment evidence until the end of trial will be denied as moot.

### I
### Procedural History

On March 16, 2020, Eugene H. Irving filed a complaint in the Circuit Court of Attala County, Mississippi, against Wilco Life Insurance Company. Doc. #2. The complaint alleges that Wilco wrongfully terminated a life insurance policy it issued to Irving, and seeks to recover the amount of coverage under the policy, damages for intentional infliction of emotional distress, and punitive damages. *Id.* at 2–3. Invoking diversity jurisdiction, Wilco removed the case to the United States District Court for the Northern District of Mississippi on May 13, 2020.[1] Doc. #1.

---

[1] The notice of removal alleges that complete diversity exists because Irving "is an adult resident of Attala County, Mississippi" and Wilco "is an Indiana insurance company with its principal place of business in Connecticut." Doc. #1 at 2. Because citizenship and residency "are not synonymous terms," "an allegation of residency alone does not satisfy the requirement of an allegation of citizenship." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (cleaned up). However, because the state court complaint alleges that Irving is a *citizen* of Mississippi, Doc. #2 at 1, there can be no dispute that diversity exists. *See Morales v. Zenith Ins. Co.*, 714 F.3d 1220, 1226 n.12 (11th Cir. 2013) (reviewing citizenship allegations in both the notice of removal and complaint); *see also Wells Fargo Bank, Nat'l Ass'n as Tr. for Holders of the Merrill Lynch Mortg. Invs. Tr., Mortg. Loan-Asset-Backed Certificate Series 2006-WMCI v. Dey-El*, 788 F. App'x 857, 860 (3d Cir. 2019) (removing party did not adequately

On January 6, 2021, Wilco moved for summary judgment on all of Irving's claims. Doc. #38. Irving filed a response on January 13, 2021, and attached his memorandum brief as an exhibit. Docs. #40, #40-1. Wilco replied on January 20, 2021. Doc. #41. The same day, Irving and Wilco filed a joint motion to seal Irving's memorandum on the ground that Irving's counsel "inadvertently included one page of a document marked confidential" pursuant to a protective order. Doc. #42.

On January 25, 2021, the Court struck Irving's response memorandum for violating Local Rule 7(b)(2) and allowed him to file a redacted version within seven days. Doc. #43. Irving filed his redacted response four days later. Doc. #44.

On February 23, 2021, the Court denied the motion to seal for failure to comply with Local Rule 79. Doc. #45. However, the Court allowed the parties to refile the motion within fourteen days. *Id.* at 2. On March 8, 2021, Irving filed a supplemental motion asking the Court to "seal his Memorandum from public access only … until the trial of this matter because the Defendant's right to a fair trial may be prejudiced." Doc. #46.

## II
## Relevant Standard

Summary judgment is proper when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014). "A court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant. A court should enter summary judgment against a party when it has

---

allege diversity because "the complaint that she sought to remove did not allege the citizenship of the parties and [the notice of removal] did not allege their citizenship either").

the burden of proof at trial yet fails to establish an element of its case." *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020) (internal citation omitted).

### III
### Relevant Facts[2]

On February 3, 1995, Lamar Life Insurance Company issued a Flexible Premium Adjustable Life Insurance Policy to Irving. Doc. #38-1 at PageID 206, 208. The policy provided that after the initial premium, Irving could choose to make other premium payments "at any time" "for any amount of $25 or more, and less than any maximum amount [the insurance company] may set." *Id.* at PageID 213. However, if premiums were not paid, coverage would "continue until the cash surrender value is less than the next monthly deduction, then the Grace Period section will apply."[3] *Id.* at PageID 214. And "[i]f the required amounts are not paid within the grace period, the policy will terminate." *Id.*

Irving paid a $343 initial premium and scheduled planned periodic premiums of $343 to be paid monthly. *Id.* at PageID 208. He authorized automatic withdrawals from his bank account

---

[2] Irving did not submit any exhibits supporting his response, opting instead to include entire portions of depositions in his brief without submitting the deposition transcripts or reporter certification. *See* Doc. #44. Wilco did not object to this method.

[3] The cash surrender value is the accumulation value less any indebtedness less the total surrender charge less the excess interest charge. Doc. #38-1 at PageID 217. The policy provides:

> The accumulation value will be calculated on each monthly date as (a) plus (b) plus (c) plus (d) less (e) less (f) less (g) less (h), where:
>
> (a) is the accumulation value on the prior monthly date;
> (b) is one month's interest on (a);
> (c) is premium received for the policy since the prior monthly date net of the Premium Expense Charge shown on the Schedule;
> (d) is interest on (c) from the date the premium was received to the monthly date;
> (e) is the monthly deduction for the prior month;
> (f) is one month's interest on (e);
> (g) is any partial surrender since the prior monthly date plus any partial surrender fee; and
> (h) is interest on (g) from the date the partial surrender was paid to the monthly date.

*Id.* at PageID 216.

to pay the $343 monthly amount. *Id.* at PageID 233. By March 3, 2016, the policy had an accumulation value of $27,185. Doc. #38-3 at PageID 240.

On March 22, 2016, after Lamar Life Insurance Company merged into Conseco Life Insurance Company,[4] Irving withdrew $25,000 from the policy. *Id.* The withdrawal reduced the accumulation value to $1,846 as of April 3, 2016. *Id.* After that date, the combined cost of the monthly insurance deduction and fees was greater than Irving's selected $343 monthly premium plus the interest on the reduced accumulation value.[5] *Id.*

On September 4, 2018, after Conseco Life Insurance Company changed its name to Wilco Life Insurance Company,[6] Wilco sent a grace period notice to Irving, informing him that his policy "entered the grace period" that day and was "in danger of terminating at the end of the 61-day grace period." Doc. #38-6 at PageID 338. After receiving the notice, Irving and his wife, Mary, called Wilco. Doc. #38-4 at PageID 248–50. A Wilco agent, James Kerby, explained that because "the cost of insurance … continued to go up," the $343 monthly premium payment was no longer sufficient to cover the cost "so the difference [was] coming out of the cash value to the point [the] cash value's been exhausted." *Id.* at PageID 251–52. Kerby told the Irvings that he would send out a "minimum premium quote of what needs to be paid going forward to keep [the] policy going without going back into a grace period." *Id.* at PageID 257.

In a September 10, 2018, letter, Wilco informed Irving that the policy was no longer in the grace period following a payment of $343 on September 4. Doc. #38-6 at PageID 339. To cover the monthly deductions, Irving would need to begin paying $470 per month starting on October 3,

---

[4] The merger occurred "on or about December 31, 1998." Doc. #39 at 2 n.1.

[5] In the months after the withdrawal, the monthly insurance deduction was approximately $367, the monthly fees were approximately $14, and the monthly interest decreased from approximately $89 to less than $7. Doc. #38-3 at PageID 240.

[6] The name change occurred in February 2017. Doc. #39 at 2 n.1.

4

2018. *Id.* Further, Irving would need to increase his monthly payment to $514 on February 3, 2019. *Id.* Mary called Wilco and, after being authorized by Irving to speak on his behalf, increased the monthly payments to $470. Doc. #38-4 at PageID 292, 295. The Wilco agent, Kimberly Rosier, warned Mary that Irving would need to call in every year to adjust the payment to cover the cost of insurance. *Id.* at PageID 295.

After receiving another grace period notice in November 2018, Mary again called Wilco to discuss the policy.[7] *Id.* at PageID 276. During this conversation, a Wilco agent, Craig Reedy, again warned Mary that because the cost of insurance would increase in February, she should "call[] sometime in the middle or towards the end of January to … change the premium payment amount from $470 to … $514." *Id.* at PageID 284. Mary replied that she "certainly will do that." *Id.* However, Mary did not call Wilco in January to increase the premium. Doc. #38-7 at PageID 359.

On February 4, 2019, Wilco sent another grace period notice to Irving advising that "[i]f you have been submitting your planned periodic premium when billed, the amount and/or frequency is not sufficient to keep your coverage in force. Contact Client Services to assist in adjusting this amount." Doc. #38-6 at PageID 341. Wilco sent additional notices on March 4, April 3, May 3, June 3, and July 3, 2019. *Id.* at PageID 342–46. Each notice advised Irving that his policy was "in danger of terminating" and to "act now to retain [his] valuable life insurance coverage." *Id.* From February 2019 through August 2019, neither Irving nor Mary called Wilco to discuss the policy or to increase the premium amount from $470 to $514. Doc. #38-7 at PageID 363.

---

[7] This grace period commenced because Irving's premiums were typically withdrawn on the third of each month. But because November 3 fell on a weekend, his premium was not paid until November 5, causing a short grace period. Doc. #38-4 at PageID 280–21.

On September 3, 2019, Wilco informed Irving that the "grace period has expired and [his] policy has lapsed with no value and all benefits are forfeited and void." Doc. #38-6 at PageID 347. Wilco also encouraged Irving to apply for reinstatement of his policy. *Id.* Irving and Mary called Wilco on September 17, 2019, to ask why Wilco did not increase the premium to $514. Doc. #38-4 at PageID 305. A Wilco agent, Stephanie Cheatam, explained that Wilco must receive verbal or written permission to increase payment amounts. *Id.* Mary indicated that she did not respond to the grace notice letters because she had been told to "disregard" them by the Wilco agent she spoke to in November 2018. *Id.* at PageID 307. Mary stated that she "should have responded to that first letter." *Id.* at PageID 310. Mary acknowledged that she "forgot about the cost of insurance rising" and failed to call to raise the premium. *Id.* at PageID 324.

After Irving applied for reinstatement, Wilco denied his request because he "no longer qualifie[d] for [the] rate at issue due to admitted medical history." Doc. #38-6 at PageID 348.

## IV
## Analysis

Wilco asserts it is entitled to summary judgment on all of Irving's claims.

### A. Breach of Contract

Irving alleges that "Wilco breached the contract by falsely stating it had not been paid the increased premium" and by "wrongfully terminat[ing] the Policy." Doc. #2 at 2–3. Wilco argues that it did not breach the contract because the policy "required sufficient premium payments to be made;" Irving's "premium payments in 2019 were insufficient to continue coverage and the Policy did not maintain a positive cash value as required by the Policy;" Wilco advised Irving that the policy was in a grace period; and "[a]t the conclusion of the grace period, the Policy was terminated [for] insufficient premium payment." Doc. #39 at 12.

6

Irving responds that Wilco breached the contract when it "intentionally refused to make a premium payment to itself and then used such failure as the excuse for termination of the policy." Doc. #44 at 1. Irving relies on an "Authorization Agreement for Preauthorized Payments" to support his argument. *Id.* Wilco replies that the authorization agreement only allowed Wilco to withdraw the preauthorized amount of $343 monthly; Irving "did not change the preauthorized amount until September 2018 when he—through his wife—requested that Wilco change the preauthorized payment from $343.00 per month to $470.00 per month;" Irving "did not authorize a change in premium payment amount at any time in 2019;" and "the Policy terminated when additional premium was not received." Doc. #41 at 3–6.

Under Mississippi law,[8] "[a] breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *Maness v. K & A Enters. of Miss., LLC.*, 250 So. 3d 402, 414 (Miss. 2018). Courts are "bound to enforce contract language as written and give it its plain and ordinary meaning if it is clear and unambiguous." *Miss. Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1266 (Miss. 2002). "Insurance policies are contracts." *S. Healthcare Servs., Inc. v. Lloyd's of London*, 110 So. 3d 735, 744 (Miss. 2013). There is no dispute that the insurance policy here is valid and binding. Thus, the issue is whether Wilco's termination of the policy amounted to a breach of contract.

The policy provides that "[s]tarting on the monthly date when the cash surrender value is less than the monthly deduction for the policy month to follow, a grace period will be given for the payment of the amount required to cover the monthly deduction." Doc. #38-1 at PageID 214. "If the required amounts are not paid within the grace period, the policy will terminate." *Id.* "At

---

[8] The policy does not contain a choice of law clause. In this diversity action, the Court applies the law of the forum state. *84 Lumber Co. v. Cont'l Cas. Co.*, 914 F.3d 329, 333 (5th Cir. 2019). The parties do not dispute that Mississippi law applies.

least 30 days before the end of the grace period [Wilco] will mail [Irving] … a notice of the amount required to continue the policy in force." *Id.*

Irving's policy entered a grace period on February 4, 2019. Wilco sent him the required notice advising him that his policy was "in danger of terminating at the end of the 61-day grace period." Doc. #38-6 at PageID 341. Wilco sent additional notices in March, April, May, June, and July of 2019 before terminating the policy on September 3, 2019. *Id.* at PageID 342–47. Because there is no evidence Irving paid the required amount to maintain the policy after it entered a grace period, he has not shown that Wilco's termination of the policy amounted to a breach of contract. Further, while Irving argues that Wilco had the authority to increase the premium payments but "Wilco intentionally refused to make a premium payment to itself," the policy leaves premium amounts and frequency to the discretion of the insured, Doc. #38-1 at PageID 213–14, and the record does not reflect that Irving ever authorized payments of $514.[9] Accordingly, Irving has not established that Wilco breached the contract. Summary judgment on the contractual claims is proper.

### B. Intentional Infliction of Emotional Distress

Wilco argues that Irving's intentional infliction of emotional distress claim "should be dismissed both because Wilco did not act in any manner that could be described as evoking outrage or revulsion and separately and independently because [Irving] admitted he suffered no distress as a result of Wilco's acts." Doc. #39 at 18. Irving concedes that this claim should be dismissed.

---

[9] Irving argues that "the insured requested the minimum premium paid be the amount of each annual premium until the maturation date," Doc. #44 at 9, and that Wilco failed to increase the premium because "the policy premium payment could not be increased in advance of the due date according to the guidelines which [the corporate representative] admitted were not a part of the policy," *id.* at 21. However, the conversations Irving includes in his brief in support of his argument that he asked to increase the premium show that he authorized the increase to $470 but do not reflect that he ever authorized an increase to $514. The conversations further show that a Wilco agent explicitly told Mary that she would have to call every year to adjust the payment. *Id.* at 9–21.

8

Doc. #44 at 28 ("Wilco's Motion for Summary Judgment should be denied, *except as to its Motion relating to emotional distress*.") (emphasis added). In light of this concession, and because Irving has not presented any evidence or argument in support of his emotional distress claim, it is deemed abandoned and summary judgment is proper.[10] *See City of Canton v. Nissan N. Am., Inc.*, 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012) ("Failure to address a claim results in the abandonment thereof.").

### C. Punitive Damages

Irving seeks "punitive damages of $500,000.00, because of Wilco's intentional, reckless, and grossly negligent handling of the claim, and bad faith breach of contract." Doc. #2 at 3. Wilco argues that Irving "cannot recover damages for bad faith if he cannot demonstrate that Wilco breached the Policy." Doc. #39 at 13. Because the Court has determined that Wilco did not breach the insurance policy, Irving is not entitled to punitive damages because his bad faith breach of contract claim fails. *See T.C.B. Constr. Co., Inc. v. W.C. Fore Trucking, Inc.*, 134 So. 3d 701, 704 (Miss. 2013) ("In a breach of contract case, the plaintiff [seeking punitive damages] must prove that the breach was the result of an intentional wrong or that a defendant acted maliciously or with reckless disregard of the plaintiff's rights.") (internal quotation marks omitted).

### D. Motion to Seal

In his motion to seal, Irving asks that his stricken memorandum be sealed from "public access … until the trial of this matter." Doc. #46. Because the Court has found that summary

---

[10] Even had Irving not abandoned the claim, the claim would not survive. Because Irving's intentional infliction of emotional distress claim is based on Wilco's actions in terminating the policy and the Court has determined that the termination does not amount to a breach of contract, Irving cannot prove the necessary elements of his intentional infliction of emotional distress claim. *See Swartzfager v. Saul*, 213 So. 3d 55, 67 (Miss. 2017) ("When the [intentional infliction of emotional distress] claim is based on a contract, a plaintiff must show that (1) the emotional distress was a foreseeable consequence of the particular breach-of-contract and (2) that he or she actually suffered emotional distress[.]").

9

judgment is proper on all of Irving's claims, Irving's motion to seal the stricken memorandum will be denied as moot.

## V
## Conclusion

Wilco's motion for summary judgment [38] is **GRANTED**. Irving's motion to seal [46] is **DENIED as moot**. A final judgment will be separately issued.

**SO ORDERED**, this 6th day of April, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**